**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-21832-Civ-COOKE/TURNOFF**

MARIA TERESA DIAZ DE ARCE,

      Plaintiff

vs.

DISTRICT BOARD OF TRUSTEES OF
MIAMI-DADE COLLEGE,

      Defendant.

_____/

### ORDER GRANTING DEENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CASE is before me upon Defendant's, District Board of Trustees of Miami-Dade College, Motion for Summary Judgment.  ECF No. 14.  Plaintiff, Maria Teresa Diaz de Arce, filed her Response to Defendant's Motion for Summary Judgment, ECF No. 18, and Defendant submitted its Reply, ECF No. 23.  I have reviewed the Motion, the Response and Reply, each party's Statement of Material Facts, ECF Nos. 14; 19, the record, the relevant legal authorities, and am otherwise duly advised in the premises.  For the reasons provided herein, Defendant's Motion for Summary Judgment is granted.

### BACKGROUND

This is an action to recover damages for alleged violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*.  Plaintiff, who was 58 years old at the time of her termination as a part-time instructor at the Miami-Dade College, asserts that Defendant discriminated against her due to her age (Count I) and retaliated against her when she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") after she was

1

terminated (Count II).  The following facts, taken from the parties' Statements of Material Facts, are undisputed unless otherwise noted.

Plaintiff began her career with Defendant in 2004.   Defendant hired Plaintiff on February 28, 2004 as a part-time faculty member, which was an hourly position, at the Miami-Dade College Kendall Campus.  Def.'s Statement ¶ 1; Pl.'s Statement ¶ 1.  From February 12, 2007 to July 3, 2008, Plaintiff was assigned to the position of Part-Time Coordinator at the School of Community Education-Special Interests, at the Wolfson Campus.  Def.'s Statement ¶ 2; Pl.'s Statement ¶ 2.  Plaintiff's employment in the School of Community Education, Wolfson Campus, continued as a Non-Credit Part-Time Instructor until the date of her termination, which was effective March 10, 2009.  Def.'s Statement ¶ 2; Pl.'s Statement ¶ 2.  At the time of her termination, Plaintiff was 58 years old, having been born on October 3, 1950.  Def.'s Statement ¶ 2; Pl.'s Statement ¶ 2.

In the Fall of 2007, Defendant received complaints concerning Plaintiff's classroom performance.  On October 24, 2007, Language Center Coordinator Luis Rodriguez received a written complaint from a student, Rossana Molino, regarding Plaintiff.  Def.'s Statement ¶ 3; Pl.'s Statement ¶ 3; *see also* Molino's Email, Def.'s Mot. for Summ. J, Ex 2-A.  Ms. Molino stated that Plaintiff was tardy, took extensive breaks, used the class to discuss her personal issues, cried in class on a number of occasions, ate and drank during class, kept her cell phone on and answered it during class, showed favoritism to selected students and failed to cover the necessary course material.  Def.'s Statement ¶ 3; Pl.'s Statement ¶ 3; *see also* Molina's Email, Def.'s Mot. for Summ. J, Ex A.  Mr. Rodriguez voiced his concerns to Sonia Gonzalez, Program Manager in the Community Education Department, via email.  Def.'s Statement ¶ 3; Pl.'s Statement ¶ 3.  On the same day, Mr. Rodriguez and Ms. Gonzalez met with Plaintiff to counsel

her on these issues.  Def.'s Statement ¶ 3; Pl.'s Statement ¶ 3.  Mr. Rodriguez memorialized the points addressed at the meeting in an email dated October 25, 2007, which was sent to Ms. Gonzalez.  Def.'s Statement ¶ 3; Pl.'s Statement ¶ 3; Rodriguez' Email, Def.'s Mot. for Summ. J, Ex 2-B.  Plaintiff indicates, in her Statement of Facts, that Mr. Rodriguez had no authority over her at that time.  Pl.'s Statement ¶ 3.[1]

In May and part of June 2008, Plaintiff reported to Ms. Gonzalez.  Despite the counseling, performance issues continued.  On May 29, 2008, Plaintiff failed to report for work and failed to provide notice of her absence to Ms. Gonzalez.  Def.'s Statement ¶ 4; Rodriguez's Email, Def.'s Mot. for Summ. J, Ex 2-C.  On May 30, Program Manager Maritza Radbill sent an email to Plaintiff, addressing Plaintiff's absence on May 29, Plaintiff's absence from a meeting on May 30, and requesting that Plaintiff speak to her regarding those issues.  Radbill's Email, Def.'s Mot. for Summ. J, Ex 2-C.  Plaintiff asserts she had a medical emergency with her stepmother on May 29 but does not recall receiving an email on May 30 regarding her absence.  Pl.'s Statement ¶ 4.  Plaintiff does not recall missing a meeting.  Pl.'s Statement ¶ 7.  On June 3, 2008, Ms. Radbill counseled Plaintiff regarding the above issues and memorialized their agreement in a memorandum to Plaintiff dated June 4, 2008, entitled "Our Meeting".  Radbill's Email, Def.'s Mot. for Summ. J, Ex 2-D.  Plaintiff denies the meeting took place or that she received the email.  Pl.'s Statement ¶ 5.

The parties agree that, as a Coordinator, Plaintiff had the responsibility to insure that part-time instructors she supervised submitted their time-sheets on time.  Def.'s Statement ¶ 10; Pl.'s Statement ¶ 10.  Defendant produced an exchange of emails between Plaintiff and Ms. Radbill regarding Plaintiff's failure to ensure timely submission of the timesheets.  Def.'s Statement ¶ 10;

---

[1] In her Statement of Material facts, Plaintiff disputes Defendant's allegations referring to the

Emails between Ms. Radbill and Plaintiff, Def.'s Mot. for Summ. J, Ex 4.  Plaintiff denies she failed to do so or that she was "counseled" regarding this issue.  Pl.'s Statement ¶ 10.

The parties disagree on whether, around the same time, Plaintiff cancelled a class one day before it should have taken place, in violation of the Department's policy requiring a two-day notice.  Def.'s Statement ¶ 10; Pl.'s Statement ¶ 10.

On June 25, 2008, Ms. Radbill prepared a counseling memorandum outlining issues discussed with Plaintiff on that date, and memorializing Plaintiff's commitment to follow established department procedures.  Def.'s Statement ¶ 11; Mr. Rodriguez Aff., Def.'s Mot. for Summ. J, Ex 2; Radbill's Memorandum, Def.'s Mot. for Summ. J, Ex 1-E.  These issues included attendance and punctuality, teaching according to the syllabus, proper use of the class materials, not allowing the students to use the lab unaccompanied, and prohibiting phone calls during class.  *See id.*  The memorandum ended with the statement that "Future evaluations will determine the assignment of new classes."  *See id.*  Plaintiff denies receiving such a memorandum.  Pl.'s Statement ¶ 11.  Yet, Plaintiff signed the memorandum.  Memorandum, Def.'s Mot. for Summ. J, Ex 1-E.  A fact that Plaintiff does not dispute.  Pl.'s Statement (not disputing ¶12 of Defendant's Statement).

On July 3, 2008, Plaintiff was terminated from her Part-Time Coordinator Community Education position and assigned to non-credit part-time teaching in Community Education under the supervision of Luis Rodriguez.  Def.'s Statement ¶ 14; Pl.'s Statement ¶ 14.  The parties dispute whether she was terminated for, among other things, her tardiness, absences, or failure to submit time sheets for herself and for her instructors, or due to a reduction in workforce.  Def.'s Statement ¶ 14; Pl.'s Statement ¶ 14.

4

In July 2008, Plaintiff began reporting to Luis Rodriguez, Language Center Coordinator, at the Wolfson Campus.  Def.'s Statement ¶ 15; Pl.'s Statement ¶ 15.  Plaintiff agrees that prior to that time, she did not feel she was being discriminated by anyone at the Miami-Dade College.  Def.'s Statement ¶ 15; Pl.'s Statement ¶ 15.

On January 20, 2009, Plaintiff arrived twenty minutes late to her 12:00 p.m., Intensive English I Lab course and sent students to the lab unaccompanied in violation of the program policy.  Def.'s Statement ¶ 16; Pl.'s Statement ¶ 16, Exchange of Emails, Def.'s Mot. for Summ. J, Ex. 1-F.  In an email to her supervisor, Luis Rodriguez, dated January 27, 2009, Plaintiff explained that she and the students took a break from 12:05 p.m. to 12:20 p.m.  Exchange of Emails, Def.'s Mot. for Summ. J, Ex. 1-F.  Mr. Rodriguez responded that sending students to the lab unaccompanied was unacceptable and deducted one hour of pay for her absence.  *See id.*  Plaintiff argues that this hour ultimately was reinstated.  Pl.'s Statement ¶ 16.

Students' complaints concerning Plaintiff's job performance continued.  In 2009, Mr. Rodriguez received four such complaints from students.  Def.'s Statement ¶ 17; Pl.'s Statement ¶ 17, Rodriguez Aff., Def.'s Mot. for Summ. J, Ex. 2; Ex. 2-G-J.  The students complained that Plaintiff was tardy, spoke Spanish in an English class; took long breaks; talked about personal and irrelevant issues during the class period; and told the class that Mr. Rodriguez did not like her because he is homosexual.  Rodriguez Aff., Def.'s Mot. for Summ. J, Ex. 2; Ex. 2-G-J.  Plaintiff states that Mr. Rodriguez never mentioned those complaints and did not provide any signed statements from these students.  Pl.'s Statement ¶ 17.

On March 4, 2009, Mr. Rodriguez advised Plaintiff that the Department of Community Education, Wolfson Campus, would not be assigning her any future courses to teach.  Def.'s Statement ¶ 20; Pl.'s Statement ¶ 20.  Defendant formally terminated Plaintiff on March10, 2009.

Def.'s Statement ¶ 20; Pl.'s Statement ¶ 20.   Plaintiff's termination was a joint decision of the Director of Community Education, Geoff Gathercole, Merrill Irving and Plaintiff's supervisors Ms. Radbill and Mr. Rodriguez, in conjunction with the Miami Dade College's Human Resources Department.   Def.'s Statement ¶ 19; Pl.'s Statement 19.   According to Defendant, Plaintiff was terminated for poor job performance.   Def.'s Statement ¶ 19.   According to Plaintiff, she was terminated for discriminatory motives, with Mr. Rodriguez's alleged bias having tainted the decision of the group.   Pl.'s Statement ¶ 19.

At the time of her termination, Plaintiff was teaching ESL Intensive 1, ESL Intensive 5 and Conversation 2.   Def.'s Statement ¶ 21; Pl.'s Statement 21.   After Plaintiff's termination, Defendant assigned other instructors to teach the courses that Plaintiff had been teaching.   Def.'s Statement ¶ 22; Pl.'s Statement 22.   According to Defendant, with the exception of one individual, 34 year-old Julia Rodriguez, all of the instructors who subsequently taught the courses Plaintiff was teaching at the time she was terminated were well over 40 years of age.   Def.'s Statement ¶ 22; Ruff Dep. at 26:6-27.   Plaintiff states that her replacement was Krystal Kessee, a woman "in her thirties."   Pl.'s Statement 21; Certificates of Participation, Pl.'s Resp. to Mot. for Summ. J Ex. 3; Students Assessment, Pl.'s Resp. to Mot. for Summ. J Ex. 4.

Prior to her termination, Plaintiff never complained of age discrimination either orally or in writing.   Def.'s Statement ¶ 23; Pl.'s Statement 23.   Plaintiff never heard anyone make any age related comments to her or about her while employed with Defendant.   Def.'s Statement ¶ 23; Pl.'s Statement 23.

After her termination, Plaintiff made a written complaint to the Human Resources Department of Miami Dade that she had been discriminated against on the basis of her gender. Def.'s Statement ¶ 24.   Joy Ruff, Director of Equal Opportunity Programs and Americans with

Disabilities Act Coordinator, investigated the complaint, interviewed all individuals identified by Plaintiff as discriminating against her and found no evidence of gender discrimination.  Ruff Dep. 6:3-8:20, Letter from Ruff to Plaintiff, Def.'s. to Mot. for Summ. J Ex. 7.  As a result, Ms. Ruff called Plaintiff to advise her of her findings, and sent Plaintiff a letter memorializing their telephone conversation with Plaintiff and restating her findings.  Ruff Dep., Letter from Ruff to Plaintiff, Def.'s. to Mot. for Summ. J Ex. 7.  Plaintiff does not recall making a gender based complaint. Def.'s Statement ¶ 24; Pl.'s Statement 24; Diaz Dep. 116:3-123:11.  She recalls a telephone conversation with Ms. Ruff, but not receiving the letter.  Diaz Dep. 118 :5-120 :14.

On May 4, 2009, the reason listed on Plaintiff's termination form was "No longer needed in the account."  Pl.'s Additional Facts ¶ 4.

After her termination, Plaintiff filed a complaint based on age discrimination with the EEOC.  Pl.'s Additional Facts ¶ 1; Plaintiff's EEOC Complaint, Pl.'s Resp. to Mot. for Summ. J Ex. 1.

After Plaintiff's termination, she could not be rehired for any other position without consulting with the Human Resources Department be consulted before Plaintiff is rehired by Defendant for any other position.  Def.'s Statement ¶ 26; Pl.'s Statement 26.  Defendant states that consultation with the Human Resources Department is a policy instituted in 1991 by Bettie Thompson and applies to all employees who were terminated or resigned as a result of performance issues.  Def.'s Statement ¶ 26; Thompson Aff., Def.'s Mot. for Summ. J. Ex. 8 (stating that the procedure has been continuously in effect since 1991).  Plaintiff, on the other hand, states that the requirement that the Human Resources Department be consulted is in retaliation for her filing of the EEOC complaint.  Pl.'s Statement 26.

Plaintiff submitted several letters of appreciation and support from her students, as well as positive student evaluations.  Pl.'s Resp. to Mot. for Summ. J. Ex.5-7.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

"The party moving for summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion.'"  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986)).  Once the moving party makes the required showing, the burden shifts to the nonmoving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings.  *Id*. at 1315.  Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

When the nonmoving party bears the burden of persuasion at trial, the party moving for summary judgment may satisfy Rule 56's burden of production by either (i) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim," or (ii) demonstrating to the court that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Celotex*, 477 U.S. at 331.  "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law."  *Id*.

## DISCUSSION

8

**A.  Age Discrimination in Violation of the ADEA (Count I).**

The ADEA prohibits an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C.  §  623(a)(1). Specifically, the ADEA forbids age-based discrimination in employment practices and decisions against workers over the age of forty.  29 U.S.C. §§ 621, 623, 631.

To prevail under the ADEA, a plaintiff must prove that age was the "but for" cause of the challenged adverse employment action.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). "The ADEA requires that age be the reason that the employer decided to act…. The employer either acted because of the plaintiff's age or it did not." *Mora v. Jackson Mem'l Found., Inc*., 597 F.3d 1201, 1204.

The ADEA permits a plaintiff to demonstrate discrimination through direct evidence or circumstantial evidence that raises a presumption of discrimination.  *See Mora*, 597 F.3d at 1204 (11th Cir. 2010) (applying the *McDonnell Douglas* framework to analyze an age discrimination claim).   Direct evidence is "evidence that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations omitted).  "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* (internal quotations omitted).  Plaintiff does not present direct evidence of discriminatory intent with regard to her termination.  Therefore, I turn to the analysis of this case, discussing the circumstantial evidence presented by Plaintiff.

**1.  Plaintiff Established a Prima Facie Case of Discrimination.**

Under the ADEA, a plaintiff sets forth a prima facie case of age discrimination through circumstantial evidence by alleging: "(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999).

The parties only dispute whether Plaintiff met the third prong of the four requirements. *See* Def." Mot for Summ. J 12.  Defendant has provided evidence showing that several part-time instructors took over Plaintiff's courses.  Ruff Dep. at 26:6-27.  The instructors who subsequently taught these courses Plaintiff was teaching at the time she was terminated ranged from 34 year-old to 71 year-old.  *See id.*

On the other hand, Plaintiff insists Krystal Kessee was her replacement, a woman "in her thirties."  Pl.'s Statement 21; Certificates of Participation, Pl.'s Resp. to Mot. for Summ. J Ex. 3; Students Assessment, Pl.'s Resp. to Mot. for Summ. J Ex. 4.  Plaintiff, however, did not provide any evidence regarding Ms. Kessee's age.  Plaintiff's estimate of Ms. Kessee's age is speculative and unreliable.  Further, the evidence provided does not show that Ms. Kessee replaced Plaintiff.  Plaintiff produced a certificate of participation given to students for the Intensive English 2 and Intensive English 5 classes, signed by Ms. Kessee.  The parties, however, agree that, at the time of her termination, Plaintiff was teaching ESL Intensive 1, ESL Intensive 5 and Conversation 2.  Def.'s Statement ¶ 21; Pl.'s Statement 21.  Accordingly, the certificates regarding the Intensive English 2 class are immaterial.  Instead, Plaintiff was teaching the *Conversation* 2 class.  Defendant presented evidence that Bill Teney, 71 years old, Aline Becker, 56 years old, and Peter Santa Maria, 57 years old, had replaced Plaintiff for the Conversation 2 class.  Ruff Dep. 26:6-27:3; Ruff Dep.

10

Ex. 2.  Plaintiff did not present any evidence as to her replacement for the Conversation 2 class. Defendant presented evidence that Julia Rodriguez, 34 years old and Vivian Gil, 45 years old, replaced Plaintiff for the Intensive English 1 class.  Ruff Dep. 26:6-27:3; Ruff Dep. Ex. 2. Plaintiff did not present any evidence as to who replaced her in the Intensive English 1 class.  Finally, the submitted certificates of participation given to students for the Intensive English 5 class and submitted by Plaintiff are dated April 2010.  Defendant presented evidence that between the date of Plaintiff's termination until April 2010 Carlos Villeta, 40 years old, then George Paxton, 49 years old, and then Reinaldo Hernandez, 54 years old, taught the Intensive English 5 class.  Ruff Dep. 26:6-27:3; Ruff Dep. Ex. 2.  Accordingly, Ms. Kessee replaced Mr. Hernandez, not Plaintiff.  In sum, Plaintiff did not provide any evidence showing that her replacements were not those indicated by Defendant.

Based on the evidence in the record, I conclude that a least one instructor hired after Plaintiff's termination, Julia Rodriguez, who is 34 years old, constitute a substantially younger person that filled the position from which Plaintiff was discharged.  Accordingly I find that Plaintiff is able to meet her low burden to show a prima facie case of age discrimination for her.  The inquiry, however, does not end here.

### 2. Plaintiff Failed to Show that Defendant's Non-Discriminatory Reasons for her Termination Were Pretextual.

If a plaintiff successfully establishes a prima facie case of age discrimination, and the defendant articulates a "legitimate, nondiscriminatory reason for the challenged employment action," the plaintiff must then establish pretext by proffering evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (internal quotation marks omitted).  "In so doing, the plaintiff may not recast the

11

reason, attempt to substitute his business judgment for that of the employer, or simply quarrel with the wisdom of that reason, assuming the reason is one that might motivate a reasonable employer." *Proe v. Facts Servs., Inc.*, 491 F. App'x 135, 137 (11th Cir. 2012) (internal quotations omitted); *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005) (noting that "[i]t is by now axiomatic that we cannot second-guess the business decisions of an employer")).  A plaintiff's demonstration that the employer was incorrect in reason is insufficient, because "if the employer acted on an honestly held belief that the employee engaged in misconduct, even if it was mistaken, no discrimination exists." *Vahey v. Philips Elecs. N. Am. Corp.*, 461 F. App'x 873, 875 (11th Cir. 2012) (citing *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir.1991)).

Instead, the plaintiff must show that the proffered reason for the adverse employment determination is pretext by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1538 (11th Cir. 1997).  Further, the plaintiff must demonstrate that the employer's proffered reason is a pretext for discrimination by "meet[ing] that reason head-on and rebut it…." *Vahey*, 461 F. App'x at 875.

Defendant argues that Plaintiff was terminated for non-discriminatrory reasons.  Def.'s Mot. for Summ. J 15-17.  Plaintiff's history of performance issues is well-documented.  Defendant produced emails, affidavits, depositions from various persons, including Plaintiff's signed memorandum supporting Defendant's position that Plaintiff was tardy, sometimes absent, discussed personal problems and cried in class, answered phone calls during class, among other legitimate reasons for Defendant's action to terminate Plaintiff.  *See, e.g.*, Mr. Rodriguez Aff., Def.'s Mot. for Summ. J, Ex 2; Radbill's Memorandum, Def.'s Mot. for Summ. J, Ex 1-E ; Exchange of Emails,

Def.'s Mot. for Summ. J, Ex. 1-F; Rodriguez Aff., Def.'s Mot. for Summ. J, Ex. 2; Ex. 2-G-J; Memorandum, Def.'s Mot. for Summ. J, Ex 1-E.

Plaintiff, on the other hand, relies merely on her own deposition testimony to deny her performance issues. Plaintiff disputes or does not recall the events discussed in Defendant's contemporaneous records, but cannot rebut the presented evidence. The record overwhelmingly contradicts Plaintiff's unsupported version of events. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Plaintiff also submitted several letters of appreciation and support from her students, as well as positive student evaluations. Pl.'s Resp. to Mot. for Summ. J. Ex.5-7. In doing so, however, Plaintiff is merely attempting to substitute her own or her students' personal judgment of her work for that of her employer. *Proe*, 2012 WL 4711288, at \*2. *Proe*, 491 F. Appx at 137 (11th Cir. 2012) ("[T]he plaintiff may not recast the reason, attempt to 'substitute his business judgment for that of the employer.'").

Plaintiff fails to demonstrate how her age was the "but for" reason for her termination. *Gross*, 557 U.S. at 177 (2009) (finding that a plaintiff must prove that age was the "but for" cause of the challenged adverse employment action). Plaintiff must come forth with a genuine dispute of material fact that age – not age and other motives – was the only impetus behind the adverse employment decision. *Gross*, 557 U.S. 167, 175 (2009) (finding that the ADEA does not authorize mixed-motives age discrimination claims). Thus, Plaintiff's burden at this stage is to show that "no reasonable employer" would have made the employment decision in this case given the circumstance, so that the proffered reasons must necessarily be pretextual. *See Lucas v. U.S. Att'y*

13

*Gen.*, 467 F. App'x 854, 858 (11th Cir. 2012).  Plaintiff has failed to make such a showing and Defendant is entitled to judgment as a matter of law on Count I.

**B.  Retaliation in Violation of the ADEA (Count II).**

A plaintiff may establish a prima facie case of retaliation under the *McDonnell Douglas* framework by demonstrating that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) the adverse action was causally related to her protected activity. *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 809 (11th Cir. 2011) (citing *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002)).  To establish a materially adverse action, a plaintiff must show that the action might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Id.* (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

In this case, Plaintiff claims that, after she filed a complaint with the EEOC, she was retaliated against when Defendant required that its Human Resources Department be consulted before Plaintiff could be rehired.  Pl.'s Statement 26.  Defendant, on the other hand, presented evidence that the consultation with the Human Resources Department prior to rehire is a long-standing policy instituted in 1991.  The policy applies to all employees who were terminated or resigned as a result of performance issues – not just Plaintiff.  Def.'s Statement ¶ 26; Thompson Aff., Def.'s Mot. for Summ. J. Ex. 8.

Plaintiff has failed to make a prima facie case of retaliation.  The record shows that the policy applies to every single employee terminated for performance issues since 1991.  Accordingly, Plaitntiff has not demonstrated that the application of the policy is retaliatory or that it would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

14

*Bradley*, 440 F. App'x at 809 (11th Cir. 2011).  For these reasons, summary judgment in favor of Defendant is warranted on Plaintiff's retaliatory claim.

**CONCLUSION**

Having reviewed the arguments and the record, I find that Plaintiff fails to establish that "but for" her age, she would not have been terminated by Defendant.  I further find that Plaintiff failed to establish that Defendant retaliated against her in applying a policy in place since 1991 after she was terminated.  Accordingly, summary judgment in favor of the Defendant is appropriate.

It is, therefore, **ORDERED and ADJUDGED** that:

1.  Defendant's Motion for Summary Judgment, ECF No. 14, is **GRANTED.**

2.  The Plaintiff's Complaint is **DISMISSED**.

3.  The Clerk is directed to **CLOSE** this case.

4.  All pending motions, if any, are **DENIED *as moot***.

**DONE and ORDERED** in chambers at Miami, Florida, this 3rd day of September 2013.

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*